IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| CAPE FEAR PUBLIC UTILITY AUTHORITY, BRUNSWICK COUNTY, LOWER CAPE FEAR WATER & SEWER AUTHORITY, and TOWN OF WRIGHTSVILLE BEACH,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>THE CHEMOURS COMPANY FC, LLC, E. I. DU PONT DE NEMOURS AND COMPANY, and THE CHEMOURS COMPANY,<br><br>　　　　　　　　　Defendants. | Case No. 7:17-CV-00195-D<br><br>Case No. 7:17-CV-00209-D |

**PLAINTIFF CAPE FEAR PUBLIC UTILITY AUTHORITY'S MEMORANDUM
IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT MASTER COMPLAINT
AND FOR RECONSIDERATION
OF ORDER DISMISSING CLAIM FOR PUBLIC NUISANCE**

**I.　　Nature of the Case**

This is an action by public water providers including movant Cape Fear Public Utility Authority ("CFPUA") seeking damages for the harm to Plaintiffs caused by Defendants' contamination of CFPUA's property and the waters of the Cape Fear River with a variety of toxic substances, generally referred to as PFAS. On Defendants' motion to dismiss, this Court dismissed all claims except claims for private nuisance, trespass to real property, and negligence. D.E.72.[1] Pursuant to the latest scheduling order (D.E. 300)[2], expert discovery closes September 20, 2024,

---

[1] Unless otherwise indicated, all docket entries refer to 7:17-CV-195-D.

[2] The Scheduling Order, D.E. 82, as amended, does not set a deadline for seeking to supplement pleadings.

and dispositive motions are due Oct. 18, 2024, so this motion is timely. L.R. 7.1. CFPUA seeks to supplement the Amended Master Complaint (D.E. 75) ("AMC") in order to include transactions, occurrences, and events that have happened (almost continuously) since the date of the AMC and relate to the issues in this case. The supplemental allegations are included in the proposed Supplemental Master Complaint attached to the Motion as Exhibit A. All of these allegations have been the subject of ongoing discovery and as such are not new to the parties. Nor will they require additional discovery, having already been the subject of discovery. In light of these supplemental allegations and recent cases involving assertions of claims for public nuisance, CFPUA also asks the Court to reconsider the dismissal of CFPUA's claim for public nuisance and reinstate it as a claim in this action.

## II.     Facts Related to this Motion

This action was commenced January 31, 2018, by the filing of a "Master Complaint" by Plaintiffs CFPUA and Brunswick County. 7:17-cv-209-D, D.E. 35. On April 4, 2019, this Court dismissed ("MTD Order") certain claims without prejudice and retained others. D.E. 72. Thereafter, pursuant to order of this Court, the Plaintiffs filed the AMC (D.E.75) on May 7, 2019.

As set forth in the AMC, Defendants for decades have been polluting the air, water, groundwater and natural resources of the Cape Fear River basin and the properties of Plaintiffs with a family of toxic chemicals referred to collectively as PFAS. The AMC asserts claims for private nuisance, trespass to real property, and private nuisance that were retained (i.e., not dismissed) by the MTD Order (MTD Order (D.E. 72, III B, pp. 10-12; III C, pp.12-13, III F, pp. 16-17), as well as alleging and preserving the dismissed claims, including a claim for public nuisance.

Since the filing of the AMC, the parties and State and Federal agencies have continued to gather data about the prior and continuing spread of PFAS from Defendants' operations. A better, albeit still incomplete, picture has emerged about the prior and continuing impacts of Defendants' conduct on CFPUA's properties and operations. A better understanding of the effects of PFAS on humans and the environment is evolving, and with it more stringent health advisories and regulations. CFPUA has engaged in substantial work to address the PFAS contamination, including expending over $60 million since filing the AMC. While Defendant Chemours has undertaken certain remedial actions (which has occasioned other litigation, described in the Supplemental Master Complaint), the lack of efficacy of those efforts has required additional action by CFPUA, increasing the damages it has suffered and continues to suffer. All of the transactions, occurrences, and events alleged in the Supplemental Master Complaint also relate to CFPUA's claim for damages under the claims retained by the MTD Order, and as such have been the subject of discovery.

Among the claims dismissed by the MTD Order is a claim for public nuisance. At the time of the original Master Complaint considered by the Court in the MTD Order, Plaintiffs alleged special damages: "As a direct and proximate result of Defendants' creation of this public nuisance, Plaintiffs have suffered—and will continue to suffer—harm that is different from the type of harm suffered by the general public, and Plaintiffs will incur substantial costs to remove Defendants' contamination from the drinking water they distribute." *See* 7:17-cv-209-D, D.E. 35 ¶ 107. This general allegation was supported by particular allegations of damages. *Id.* ¶¶ 1, 5, 8, 58-61, 68, 89, 94-97, 105-06, 108. The MTD Order dismissed Plaintiffs' public nuisance claim because: "Plaintiffs have not plausibly alleged 'special **and unique** damage' caused by defendants' alleged interference with plaintiffs' property." D.E. 72, IIIA, p. 10 (emphasis added) (citations omitted).

3

The damages incurred by CFPUA since the filing of the AMC are detailed in the proposed Supplemental Master Complaint and have been regularly disclosed to Defendants throughout discovery. CFPUA's latest Expert Report summarizing those damages through fiscal year ending June 30, 2023[3] details damages to date of $60,367,615, and estimates future incremental operational costs (present value) of $190,072,511. These are primarily for the cost of construction and operation of the granular activated carbon ("GAC") filtration system necessary to filter the PFAS contaminates from Defendants' operations. The actual special damages now more specifically alleged are of the type recognized by the North Carolina courts in claims by private plaintiffs for public nuisance.

### III. Argument

#### A. CFPUA's Motion to Supplement is appropriate and the Court should permit CFPUA to file and serve the Supplemental Master Complaint.

Rule 15(d) of the Rules of Civil Procedure provides that the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Under Rule 15(d), leave should be "freely granted," as supplemental pleadings are "'of such service in the efficient administration of justice that they ought to be allowed as a matter of course.'" *Estate of Williams-Moore v. Alliance One Receivables Mgmt.*, 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004) (quoting *New Amsterdam Cas. Co. v. Waller,* 323 F.2d 20, 28–29 (4th Cir.1963)).

Since the filing of the AMC on May 7, 2019, numerous transactions, occurrences, and events have occurred that relate to the issues to be decided in the up-coming dispositive motions and/or at trial. Chief among these have been: the evolving understanding of these chemicals,[4]

---

[3] The latest fiscal year numbers are not yet available.

[4] Supplemental Master Complaint, ¶¶ 199-200.

resulting in tighter levels of health advisories,[5] increased regulatory requirements and actions,[6] and the identification of additional members of the PFAS family of particular concern;[7] Defendant Chemours' actions pursuant to the Consent Decree[8] intended to ameliorate the effects of its past and present discharges; discovery of additional impacts to CFPUA's operations;[9] and CFPUA's expenditure of over $60 million attempting to address the PFAS contamination of its works and properties.[10] These are the damages CFPUA will seek to prove in support of each of its claims.

The supplemental allegations relate to the claims asserted and damages sought. As such, these are allegations appropriately added through a supplemental pleading. In *New Amsterdam, supra,* the plaintiff sought to supplement the complaint before the hearing to allege additional challenged transfers. The Fourth Circuit reversed the District Court's denial of said motion. 323 F.2d at 28. The Supreme Court has approved supplementation even after trial to allege additional damages:

> Where there is a good cause of action stated in the original bill, a supplemental bill setting up facts subsequently occurring which justify other or further relief is proper. If the original decree in the trial court had not been entered, this supplemental petition would simplify the controversy. We think this procedure is equally applicable after remand for further proceedings.

*City of Texarkana, Tex. v. Arkansas, Louisiana Gas Co.*, 306 U.S. 188, 203, 59 S. Ct. 448, 455–56, 83 L. Ed. 598 (1939) (footnotes omitted).

---

[5] *Id.*, ¶¶ 201-02.

[6] *Id.*, ¶¶ 201-11.

[7] In particular, PFMOAA, only emitted by Chemours and the prime contributor to CFPUA's remediation headaches. *Id.*, ¶¶ 200, 214-15.

[8] *Id.*, ¶¶ 204-11.

[9] *Id.*, ¶¶ 214-15.

[10] *Id.*, ¶¶ 212-16. These damages are the subject of detailed reports produced in discovery and CFPUA's damages' expert has been deposed by Defendants with respect thereto.

Denial of a Rule 15(d) motion requires a showing of prejudice to the defendant. *Estate of Williams-Moore, supra.* No prejudice will result to Defendants as a result of allowing this motion. Defendants will be faced with the same evidence and arguments regardless. All of the transactions, occurrences, and events CFPUA seeks to include in the Supplemental Master Complaint relate directly or indirectly to its damages claims equally under the existing theories (private nuisance, trespass, and negligence) and under the public nuisance claim (discussed below) and, as such, have been the subject of extensive factual discovery and are currently the subject of expert discovery, the latter which has not ended yet.

The supplemental allegations are new to the pleadings, but not to the parties. This is the appropriate time to update the Court on the transactions, occurrences, and events since the AMC affecting this case. Local Rule 7.1(a) provides that "'[a]ll motions …except those relating to the admissibility of evidence at trial must be filed on or before 30 days following the conclusion of the period of discovery." Expert discovery closes in this case September 20, 2024, D.E. 300, so this motion is timely under L.R.7.1. The Scheduling Order in this case, as amended [D.E. 82, 105, 107, 110, 120, 142, and 300], does not set a separate deadline for supplemental pleadings.[11] It provides only that "motions to join additional parties and to **amend** pleadings must be made promptly after the information giving rise to the motion becomes known to the party or counsel" [D.E. 82 (Scheduling Order, Sept. 18, 2019) (emphasis added)[12]], and hence has no applicability to this motion.[13]

---

[11] This is logical, since supplemental pleadings address events occurring right up to the time of trial, after which a party may seek leave to amend to conform to the evidence. Federal Rule of Civil Procedure 15(b).

[12] Each subsequent amendment to the Scheduling Order has stated: "All other deadlines remain unchanged."

[13] *See Doe v. Marshall Univ. Bd. of Governors*, 683 F. Supp. 3d 522, 529 (S.D.W. Va. 2023) (requiring good cause for amendment but not supplementation); *Frechette v. Zia Taqueria, LLC*,

Even if the Scheduling Order is interpreted to apply to supplemental pleadings, the current motion is "prompt,"[14] for the purposes of promoting judicial efficiency: the subsequent transactions, occurrences, and events have been nearly continuous, as is evident from the supplemental allegations; a narrow reading of "prompt" as requiring action after each alleged event would require numerous, repetitive motions, wasteful of the resources of the Court and litigants. These ongoing transactions, occurrences, and events have involved, directly or indirectly, the parties and have all been the subject of written discovery, depositions, and expert analyses. Supplementation of the pleadings is appropriate so that the Court's consideration of the upcoming dispositive motions (Oct. 18, 2024, D.E.300), as well as any subsequent trial issues, will be informed by the pleadings.

Supplementation in this case is proper for an additional reason: to serve as an additional basis for the Court to reconsider the prior dismissal without prejudice of the public nuisance claim, (discussed below). The Court dismissed that claim because: "Plaintiffs have not plausibly alleged 'special **and unique** damage' caused by defendants' alleged interference with plaintiffs' property." MTD Order, D.E. 72, IIIA, p. 10 (citations omitted) (emphasis added). As discussed below, the damages alleged in the Supplemental Master Complaint actually incurred by CFPUA

---

No. 2:18-CV-3208-DCN, 2020 WL 13617433, at *6–8 (D.S.C. Apr. 7, 2020) (same); *Poly-Med, Inc. v. Novus Sci. Pte Ltd.*, No. 8:15-CV-01964-JMC, 2017 WL 2874715, at *4 (D.S.C. July 6, 2017) ("Because a supplemental claim is not an 'amendment,' it is not governed by the standards set forth in Rule 16(b) for amendments filed after a scheduling order deadline."); *Reyazuddin v. Montgomery Cnty.*, Md., No. CIV.A. DKC 11-0951, 2012 WL 5193837, at *3 (D. Md. Oct. 18, 2012) (holding that Rule 16(b) is "inapplicable" to supplementation under Rule 15(d)); *Ohio Valley Env't Coal. v. U.S. Army Corps of Engineers*, 243 F.R.D. 253 (S.D.W. Va. 2007) (where scheduling order lists only amendment and not supplementation deadline, Fed. R. Civ. P. 16(b) good cause standard does not apply).

[14] Alternatively, this motion is offered now with good cause [FRCP 16(b)(4)] because earlier, repetitive motions would have been wasteful of the resources of the litigants and this Court, impairing rather than improving the efficiency of the administration of this case.

are substantial and are special damages of a type not common to the public, qualifying CFPUA to assert a claim for public nuisance. These expenses (exceeding $60 million) are necessary for CFPUA to remove PFAS from the water it is receiving at levels in excess of health advisory guidance and to meet its special obligation to the public consumers of the water it distributes. The public at large does not suffer similar damages from this public nuisance since they do not distribute nor are they responsible for distributing the water they consume.

To the extent the Court believed that the original complaint was defective in its allegation of special damages (discussed below), curing that defect by supplementation is an appropriate use of Rule 15(d). "Under Rule 15(d), a party may supplement its complaint 'even though the original pleading is defective in its statement of a claim for relief or defense.'." *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002) (cleaned up) (reversing district court denial of leave to amend and supplement).

> **B. The Court should reconsider its decision to dismiss CFPUA's public nuisance claim and should reinstate the claim.**
>
> > **1. Defendants' conduct, as alleged in the AMC and the Supplemental Master Complaint, has created a public nuisance.**

The ancient law of public nuisance embraces a broad panoply of public interests.

> In 20 R. C. L. (Nuisances), part § 7, p. 384, we find: "A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights. … According to Blackstone (4 Com. 166) 'common or public nuisances are offenses against the public order or economical regimen of the state, being either the doing of a thing to the annoyance of the king's subjects or the neglecting to do a thing which the common good requires! The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing itself. It is public because of the danger to the public."

*State v. Everhardt*, 203 N.C. 610, 166 S.E. 738, 741–42 (1932). The AMC and the proposed Supplemental Master Complaint each adequately allege the existence of a public nuisance caused by Defendants' conduct: Defendants' intentional and negligent discharge of toxic chemicals into

the air, surface waters, and groundwaters of the States is plainly an offense against and a danger to the public. The State of North Carolina has alleged that this conduct by these Defendants creates a public nuisance, and the North Carolina Business Court agrees those allegations are sufficient to state a claim for public nuisance.

> The Court determines that, at this preliminary stage, Plaintiff has met its burden by alleging that the PFAS contamination from Fayetteville Works is subversive of public order and affects the citizens of North Carolina at large. Accordingly, to the extent they seek dismissal of Plaintiff's claim for public nuisance, the Motions are **DENIED**.

*State ex rel. Stein v. EIDP, Inc.,* No. 20 CVS 5612, 2023 WL 2326101, at *7, 2023 NCBC 18, 44, 2023 NCBC Lexis 32 (N.C. Super. Mar. 2, 2023) (attached to the Motion as Exhibit B). Defendants did not challenge the sufficiency of the allegations of public nuisance either in that case[15] or on the MTD in this case, where they challenged only whether Plaintiffs had special damages.

### 2. The expense CFPUA has incurred to remove Defendants' PFAS from its public water supply constitutes special damage.

To claim damages resulting from a public nuisance, the plaintiff must allege "special or peculiar damage." *Hampton v. N.C. Pulp Co.*, 223 N.C. 535, 542, 27 S.E.2d 538, 543 (1943); *Barrier v. Troutman*, 231 N.C. 47, 55 S.E.2d 923 (1949) (a private plaintiff seeking to assert a claim for public nuisance must show "unusual and special damage, differing from that suffered by the general public"). The MTD Order dismissed Plaintiffs' public nuisance claim because: "Plaintiffs have not plausibly alleged 'special **and unique** damage' caused by defendants' alleged interference with plaintiffs' property." D.E. 72, IIIA, p. 10 (citations omitted) (emphasis added).

---

[15] Defendants' only challenge in *State ex rel. Stein* was: "Defendants characterize nuisance as merely a 'tort of last resort' which has no place where, as here, there exists a statutory and regulatory scheme governing emissions." *Id*. The Court rejected this argument: "The Court is not persuaded by Defendants' argument to disregard the established law of this State." *Id*.

North Carolina law does not require "unique" damages, but only "*special*" damages, *i.e.*, damages that are different in kind from those suffered by the general public.

First, since the filing of the AMC,[16] Plaintiffs have actually incurred substantial damages. Specifically, as a result of PFAS from Defendants' operations is entering CFPUA's water system at levels above the levels recommended as safe by the EPA and the State of North Carolina, CFPUA has engaged consultants to evaluate methods for removing these toxic chemicals (or reducing them to levels below the recommended safety levels) and, based on those recommendations, CFPUA selected the GAC filtration system. CFPUA has expended substantial sums designing, constructing, and operating that system, and has expended other sums on increased landfill expenses and on remediating groundwater impacts.

Defendants' efforts to remediate the effects of their current and prior emissions have, contrary to the goals of the Consent Decree, proven ineffectual, requiring further CFPUA expenditures. CFPUA's expenses to date have exceeded $60 million in order to protect its customers from the effects of the public nuisance created by Defendants on the drinking water supplied by CFPUA.

Second, the public at large does not suffer the kind of damages suffered by CFPUA as a result of this public nuisance because the public at large does not draw water from the Cape Fear River in order to provide to members of the public for drinking water and other uses. North Carolina case law recognizes CFPUA's damages as special damage supporting a claim for public nuisance, particularly in light of the supplemental allegations, and case law from other jurisdictions

---

[16] While CFPUA's original allegations of special damages were legally sufficient, any defect is cured by the proposed Supplemental Master Complaint.

focusing specifically on the impacts of PFAS contamination recognizes that the special status of entities providing drinking water to the public supports public nuisance claims by such entities.

### a. North Carolina precedent recognizes CFPUA's increased costs as special damages.

CFPUA's public nuisance claim is based on the fact that CFPUA has incurred and will continue to incur additional costs to remove Defendants' toxic PFAS contamination from drinking water sold to the public for consumption. Although every member of the public *could* experience impaired use of the Cape Fear River caused by Defendants purposeful contamination of the river, no member of the general public will experience damages like those faced by CFPUA. CFPUA is a "public instrumentality exercising public and essential governmental functions to provide for the public health and welfare," N.C. Gen. Stat. § 162A-6(a), and specifically empowered by state law "[t]o acquire, lease as lessee or lessor, construct, reconstruct, improve, extend, enlarge, equip, repair, maintain and operate any water system or part thereof," N.C. Gen. Stat. § 162A-6(a)(5), where "improvements" to the system include "such repairs, replacements, additions, extensions and betterments of and to a water system . . . **as are deemed necessary by the authority** to place or to maintain such system in proper condition **for its safe, efficient and economic operation**," N.C. Gen. Stat. § 162A-2(5) (emphasis added). CFPUA, in its role of supplying water for the public health and welfare, has incurred damages in the form of the costs of system improvements needed to remove Defendants' contamination from water to be sold to the public as required to safely, efficiently, and economically operate CFPUA's system.

These are special damages. The North Carolina Supreme Court has explained what constitutes special damages, concluding:

> Without further entangling the subject in a web of fine distinctions, it all sums up to this: The law will not permit **a substantial injury to the person or property** of another by a nuisance, though public and indictable, to go without individual redress, whether the right of action be referred to the existence of a special damage,

> or to an invasion of a more particular and more important personal right. **The personal right involved here is the security of an established business**. The fact that plaintiff had such established antedating the nuisance, and that the injury had been done to this, takes him out of the rule and makes his damage special and peculiar.

*Hampton,* 223 N.C. 535 at 547, 27 S.E.2d at 545–46 (emphasis added). In *Hampton*, the plaintiff was a commercial fishing enterprise on the banks of the Roanoke River whose operations were severely impacted by defendant's downstream pollution of the River, preventing the movement upstream of the fish plaintiff harvested. Defendant's conduct impacted the public's right to fish generally and was a public nuisance. But even though the public at large had a right to fish, and all members of the fishing public were injured by the defendant's creation of a public nuisance, the Court held that plaintiff's commercial enterprise was different in kind and degree and the damage to it rose to the level of special damages. Similarly, CFPUA and its predecessor (the City of Wilmington) had an established business and purpose of supplying water from the Cape Fear River for public consumption that antedates Defendants' contamination of the river with PFAS, and that business and purpose of supplying water in a safe, efficient, and economic manner has been damaged by Defendants. This is precisely the situation in which a public nuisance claim lies.

CFPUA, but not the public at large, is charged with delivering safe, potable water to its customers, and to do so it must invest huge sums to attempt to undo the harm imposed by the public nuisance created by Defendants. CFPUA's business has been damaged by Defendants' creation of a public nuisance, and *Hampton* shows that North Carolina law provides a remedy via CFPUA's public nuisance claim.

### b. Recent PFAS contamination cases recognize that public water suppliers suffer "special damages" in the form of increased costs to remove PFAS contamination not addressed by existing systems.

More recent case law from other states specifically dealing with PFAS contamination confirms that CFPUA has special damages. While those cases apply the common law of different states, the controlling principles are indistinguishable from North Carolina precedent: special damages are damages distinct from the damages suffered generally by the public.

While PFAS contamination affects all users of the contaminated water, distributors of drinking water are specially impacted, as recognized in a recent case from the U.S. District Court for the Middle District of Alabama. *Utilities Bd. of Tuskegee v. 3M Co., Inc.*, No. 2:22-CV-420-WKW, 2023 WL 1870912 (M.D. Ala. Feb. 9, 2023). There, a class of public water providers sued manufacturers (including DuPont) for PFAS contamination of public waters. Addressing Defendants' motion to dismiss, in part on the grounds that plaintiffs had not suffered special damages, the Court held:

> While the public is certainly damaged by contaminated water in UBT's public water source, **UBT suffers "special damage[s]" because it uses the water in a unique way that most of the public does no**t or cannot: it draws, treats, and sells the water for consumption. *Id.* UBT is, by definition, an entity that has a special right of use to the water that is not granted to the public at large, and UBT alleges that the water contamination has inconvenienced that right. (D.E. # 32 at 13 ("**UBT's 'special damages' include ... expenses associated with the future installation and operation of a filtration system capable of removing Defendants' chemicals from the water**; expenses incurred to monitor PFAS contamination levels; expenses incurred to purchase water from any other water system; expenses to properly dispose of PFAS removed from drinking water; and lost profits and sales ... These damages are unique and different from those who merely 'use and enjoy' the water.") (citations omitted).) **Unlike general public use, UBT's facility is practically rendered useless as long as the nuisance persists absent abatement.**
>
> **Accordingly, UBT has sufficiently alleged special damages necessary to bring a public nuisance action**.[23]

> [Footnote 23]3M argues that UBT does not suffer "special" damage because (1) it alleges that 90 other water utilities are similarly harmed, and (2) because anybody can draw water from the Alabama's public waterways. (D.E. # 39 at 11–13.) Both arguments are misplaced. First, approximately 90 other water utilities are a far cry from the "general" public (and none of these other utilities pull from UBT's water source). *See W. Morgan-E. Lawrence Water & Sewer Auth.*, 208 F. Supp. 3d at 1234 n.5 (finding that 25,000 people can suffer special damage that is not the same damage as the public at large). Second, **while it may be true that anybody can draw some amount of contaminated water from public waterways, the general public does not have the right to draw mass volumes of water to sell as safe drinking water, like UBT does. Accordingly, UBT (and water utilities generally) suffer special damage from public water source contamination that the public does no**t.

*Id.* at *15 (emphasis added). Similarly, in *W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1234 (N.D. Ala. 2016), the court denied defendants' motion to dismiss a public nuisance claim, finding: "The Authority's claimed special damage is that it sells water from the River, has incurred costs of testing the water for [PFAS] contamination levels and trying to remediate the problem, and has suffered damage to its 'public image.'" CFPUA's situation is indistinguishable.

That PFAS contamination is recognized as imposing special harm on water processors is highlighted by *City of Murfreesboro v. BFI Waste Sys. of Tennessee, LLC*, No. 3:22-CV-00605, 2023 WL 8241529 (M.D. Tenn. Nov. 28, 2023), where defendant did not even seek to challenge plaintiff's right to assert a public nuisance claim. The Plaintiff (operator of a publicly owned waste water treatment plant) sued the operator of a landfill under a variety of theories, including public nuisance based on PFAS leachate infiltrating the water system. Plaintiff's alleged special damages (like CFPUA's) are the expenses related to the remedial action necessary to remove from its waste water system PFAS not removed by the existing filtration system. Defendant moved to dismiss all claims *except* the public nuisance claim.

Even private individuals faced with having to decontaminate their property and wells[17] from PFAS contamination may maintain an action for public nuisance on the finding that these costs constitute special damages. Finding first that well contamination alone is not different in kind from public harm, the U.S. District Court for Maine found plaintiffs could still claim damages for PFAS contamination under a public nuisance theory.

> But there is one harm that the Plaintiffs allege that they have suffered that might be considered a special harm, and that is their need to decontaminate their properties and water.

*Higgins v. Huhtamaki, Inc.*, No. 1:21-CV-00369-NT, 2022 WL 2274876, at *9 (D. Me. June 23, 2022). Similarly, in *Ryan v. Greif, Inc.*, No. 22-CV-40089-MRG, 2023 WL 8828220, at *15 (D. Mass. Dec. 21, 2023), the court found that subclasses of "property owners who have sustained the 'special harm' of needing to decontaminate their properties from PFAS" satisfy the public nuisance special damage requirement while subclasses of consumers and medical monitoring claimants did not. *Any* special damage, beyond the same general health risks to which the public at large is exposed, has been found to satisfy the special damages requirement. *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1341-42 (N.D. Ga. 2021) (special harm of having to pay increased water rates and surcharges to remove PFAS), *aff'd sub nom. Johnson v. 3M Co.*, 55 F.4th 1304 (11th Cir. 2022) (municipal immunity does not shield Dalton Utilities from Johnson's nuisance abatement claim); *see also Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1339-40 (N.D. Ga. 2022) (special damages element satisfied by alleging diminished property values; interference with the use and enjoyment

---

[17] If individuals claim only harm from possible health effects to PFAS exposure, their claims are merged into the public right and are not special damages. *Dew v. E.I. du Pont de Nemours & Co.*, No. 5:18-CV-73-D, 2019 WL 13117100 (E.D.N.C. Apr. 17, 2019); *Nix v. Chemours Co. FC, LLC*, 456 F. Supp. 3d 748 (E.D.N.C. 2019); *Priselac v. Chemours Co.*, No. 7:20-CV-190-D, 2022 WL 909406 (E.D.N.C. Mar. 28, 2022).

of properties; upset, annoyance and inconvenience; increased rates and surcharges as ratepayers; and costs incurred to obtain alternate potable water supplies).

### 3. North Carolina law does not require special damages to be "unique" and other claimants may have similar "special damages" arising from the same public nuisance.

While CFPUA's damages are special (non-public), there is no requirement that special damages be "unique." Perhaps the MTD Order's reference to "unique" damages owes its origin to Defendants' Reply Brief in support of the Motion to Dismiss (to which Plaintiffs could not respond).[18] Defendants argued that since private landowners have also brought nuisance claims on the same factual allegations (referring presumably to *Nix* and *Dew*, *supra*), Plaintiffs in this case do not have special damages. Defendants incorrectly asserted that the *Hampton* plaintiff "was able to show a special injury **because no other person had suffered any similar injury** from the alleged nuisance." 7:17-CVS-209, D.E. 65, pp.9-10 (emphasis added). That is not the holding of *Hampton* or the law of North Carolina. Indeed, *Hampton* states the opposite:

> **[A]n injury** to private property, or to the health and comfort of an individual, **is in its nature special and peculiar**, and does not cause a damage which can properly be said to be common or public, **however numerous may be the cases of similar damage arising from the same cause**.
> * * *
> **The fact that others would suffer in the same way, if they were similarly engaged, constitutes no bar to the maintenance of the present action [for public nuisance].**

*Hampton, supra,* 223 N.C. at 544–46, 27 S.E.2d at 544-45 (emphasis added). *Hampton* thus makes clear that a plaintiff's damages need not be unique—or even uncommon—to support a claim for public nuisance.

---

[18] None of the cases cited in the MTD Order refer to special damages as "unique."

Similarly, in *Utilities Bd. of Tuskegee, supra,* defendants challenged the special damages element of plaintiffs' public nuisance claim[19] because 90 other public water providers were similarly harmed, but the court rejected that argument based on the same theory applied in *Hampton*—all were specially harmed—and their numerosity did not convert their damage to a purely public damage. *See also W. Morgan-E. Lawrence Water & Sewer Auth.*, 208 F. Supp. 3d at 1234 n.5 (noting that 25,000 people can suffer special damage that is not the same damage as the public at large). The same reasoning also applies under Georgia law:

> The Defendants contend that the Plaintiff cannot show any special damages where, as here, his alleged injuries are shared by other members of the public. … **An injured person does not "lose this right because others in the vicinity have similar causes of action**…. These real and personal property damages give rise to a private cause of action for public nuisance—regardless of the Plaintiff's request to have this case certified as a class action. *Johnson*, 563 F.Supp.3d at 1341 (finding "**plaintiffs can show special damages even where they represent a class of thousands**").

*Parris v. 3M Co., supra,* 595 F. Supp. 3d at 1339-40 (emphasis added) (denying motion to dismiss public nuisance claim).

Whether CFPUA's damages were properly or improperly determined to be "unique," Plaintiffs originally alleged special damages generally (7:17-cv-209-D, D.E. 35 ¶ 107) as well as specifically:

> Plaintiffs are governmental entities that serve thousands of North Carolina residents whose drinking water supply has been contaminated by Defendants' PFAS for decades. Plaintiffs seek to recover the costs—past, present, and future—necessary to manage and remove Defendants' perfluorinated chemicals from their public drinking water supply.

---

[19] The claim for private nuisance was dismissed because Alabama, unlike North Carolina, has provided by statute that private nuisance "is one limited in its injurious effects to one or a few individuals." Ala. Code § 6-5-121 (1975).

*Id.* ¶ 8. Since that time, Plaintiffs have expended the specific sums ($60 million) now alleged in the proposed Supplemental Master Complaint (Exhibit A to Motion). "The allowance of such a supplemental pleading presents no new substantive controversy. . . . It is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *New Amsterdam, supra,* 323 F.2d at 28. The claim for public nuisance as asserted by CFPUA should be allowed to go forward.

### 4. Public and private nuisance claims are not mutually exclusive.

This Court did not dismiss the private nuisance claim. MTD Order, D.E. 72, III F, pp. 16-17. Where both a private and a public nuisance are asserted, this is sometimes referred to as a "mixed nuisance." *McManus v. S. Ry. Co.*, 150 N.C. 655, 64 S.E. 766, 768 (1909). "Nuisances that are at the same time both public and private are called mixed nuisances." 58 Am. Jur. 2d Nuisances § 24; *see also* 66 C.J.S. Nuisances § 8 ("[A] mixed nuisance is one which is public and which at the same time causes special damage to a private individual."). This is in effect an alternative articulation of the principle that a private claim for public nuisance requires a showing of special damage. *McManus* makes clear that when plaintiff has a claim for private nuisance, but defendant's conduct rises to the level of a public nuisance, injuring many claimants, neither nuisance claim is extinguished. The AMC private nuisance claim alleged damage to CFPUA and was not dismissed by the Court. It thus survives and separately supplies a species of special damage.

The dismissal of the public nuisance claim should be reconsidered and the claim reinstated.

## IV. Conclusion

Because the allegations included in the Supplemental Master Complaint relate to all of the claims and satisfy the requirements of Rule 15(d) and no prejudice to Defendants will result,

CFPUA respectfully asks that the Court enter an Order permitting CFPUA to file the Supplemental Master Complaint pursuant to Rule 15(d). Because CFPUA adequately pled special damages, and CFPUA's Supplemental Master Complaint provides more detail regarding those damages, CFPUA respectfully requests that the Court enter an Order reinstating CFPUA's public nuisance claim (Count I), and granting such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 12th day of July, 2024.

/s/ Shana L. Fulton
George W. House
N.C. State Bar No. 7426
ghouse@brookspierce.com
Alexander Elkan
N.C. State Bar No. 31502
aelkan@brookspierce.com
Joseph A. Ponzi
N.C. State Bar No. 36999
jponzi@brookspierce.com
Shana L. Fulton
N.C. State Bar No. 27836
sfulton@brookspierce.com
Matthew B. Tynan
N.C. State Bar No. 47181
mtynan@brookspierce.com

**BROOKS, PIERCE, McLENDON, HUMPHREY & LEONARD, LLP**
Post Office Box 26000
Greensboro, North Carolina 27420-6000
Telephone:	(336) 373-8850
Facsimile:	(336) 232-9114

*Counsel for Plaintiff Cape Fear Public Utility Authority*

**CERTIFICATE OF WORD COUNT**

    I hereby certify that the foregoing document complies with the word count limits established in Local Civil Rule 7.2(f). Specifically, the document contains 5,841 words, as counted in compliance with Local Civil Rule 7.2(f)(1).

                                         */s/ Shana Fulton*
                                         Shana Fulton