IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CAPE FEAR PUBLIC UTILITY AUTHORITY, BRUNSWICK COUNTY, LOWER CAPE FEAR WATER & SEWER AUTHORITY, and TOWN OF WRIGHTSVILLE BEACH, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 7:17-CV-195-D |
| v. | ) ) ) | Case No. 7:17-CV-209-D |
| | ) ) | **ORDER** |
| THE CHEMOURS COMPANY FC, LLC, E.I. DU PONT DE NEMOURS AND COMPANY, and THE CHEMOURS COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

On January 31, 2018, the Cape Fear Public Utility Authority ("Cape Fear" or "plaintiff") and Brunswick County (the "County"; collectively "plaintiffs") filed a Master Complaint of Public Water Suppliers against DowDuPont, Inc. ("DowDuPont"),[1] E.I. du Pont de Nemours and Company ("DuPont"), The Chemours Company, and The Chemours Company FC, LLC ("Chemours"; collectively "defendants") alleging that defendants discharged toxic chemicals from the Fayetteville Works facility into the Cape Fear River and surrounding air, soil, and groundwater. See Master Compl., Brunswick Cnty., No. 7:17-CV-209-D (E.D.N.C. Jan. 31, 2018) [D.E. 35]. On May 7, 2019, Cape Fear filed an amended master complaint [D.E. 75]. The court has detailed

---

[1] On March 1, 2018, the County voluntarily dismissed without prejudice DowDuPont as a defendant. See Notice of Voluntary Dismissal, Brunswick Cnty. v. E.I. du Pont de Nemours & Co., No. 7:17-CV-209-D (E.D.N.C. Mar. 1, 2018) [D.E. 45–47]. On March 2, 2018, Cape Fear voluntarily dismissed without prejudice DowDuPont as a defendant. See Notice of Voluntary Dismissal, Cape Fear Pub. Util. Auth. v. Chemours Co. FC, No. 7:17-CV-195-D (Mar. 2, 2018) [D.E. 35].

the extensive history of this case. See, e.g., Cape Fear Pub. Util. Auth. v. Chemours Co. FC, LLC, No. 7:17-CV-195, 2019 WL 13300188 (E.D.N.C. Apr. 19, 2019) (unpublished). This order recounts relevant events concerning the pending motions.

Cape Fear appeals three non-dispositive orders of United States Magistrate Judge Robert T. Numbers, II [D.E. 295, 301, 303]. On April 23, 2024, Magistrate Judge Numbers denied in part and granted in part Cape Fear's motion to compel unredacted copies of documents from defendants [D.E. 289]. On May 2, 2024, Magistrate Judge Numbers denied Cape Fear's motion to compel documents concerning the 2015 Chemours spinoff, limiting the scope of discovery to the claims included in Cape Fear's amended master complaint, and restricting Cape Fear's expert discovery [D.E. 292]. That same day, Magistrate Judge Numbers denied Cape Fear's motion to compel defendants to produce copies of communications between defendants and certain third parties [D.E. 293]. On May 14, 2024, and May 23, 2024, defendants moved to seal the appeals [D.E. 299, 307, 308]. As explained below, the court denies in part defendants' motions to seal and affirms Magistrate Judge Numbers's orders.

I.

The court begins with defendants' motions to seal. See [D.E. 299, 307, 308]. The "public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." United States ex rel. Oberg v. Nelnet, Inc., 105 F.4th 161, 170–71 (4th Cir. 2024) (quotation omitted); Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014); see Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 n.17 (1980); Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978); Media Gen. Operations, Inc. v. Buchanan, 417 F.3d 424, 428 (4th Cir. 2005). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." Doe,

2

749 F.3d at 265; Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004). "Because there are two sources, the right protected by each varies." Oberg, 105 F.4th at 171.

"The common law presumes a right of the public to inspect and copy all judicial records and documents." Id. (quotation omitted); Nixon, 435 U.S. at 597; Va. Dep't of State Police, 386 F.3d at 575; see Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). "Documents filed with the court are judicial records if they play a role in the adjudicative process or adjudicate substantive rights, such as when they were filed with the objective of obtaining judicial action or relief." Oberg, 105 F.4th at 171; In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290–91 (4th Cir. 2013). A presumption of public access arises when a court finds that a document is a judicial record. See Oberg, 105 F.4th at 171; Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access." Rushford, 846 F.2d at 253. In performing this inquiry, the court asks "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." Oberg, 105 F.4th at 171; In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984); see United States v. Amodeo, 71 F.3d 1044, 1051 (2d Cir. 1995).

"Unlike the common-law right, the First Amendment right of access extends only to certain judicial proceedings and records." Oberg, 105 F.4th at 171; Stone, 855 F.2d at 180. Specifically, the right attaches to any judicial proceeding or record "(1) that has historically been open to the press and general public; and (2) where public access plays a significant positive role in the functioning of the particular process in question." Oberg, 105 F.4th at 171 (quotation omitted);

3

Courthouse News Serv. v. Schaefer, 2 F.4th 318, 326 (4th Cir. 2021) (cleaned up). The First Amendment right of access also protects "materials submitted in conjunction with judicial proceedings that themselves would trigger the right of access." Oberg, 105 F.4th at 171; see Doe, 749 F.3d at 267; In re Wash. Post Co., 807 F.2d 383, 390 (4th Cir. 1986). Whenever the First Amendment protects a proceeding or a document, a court may restrict access "only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." Oberg, 105 F.4th at 171 (quotations omitted); see Doe, 749 F.3d at 266; Wash. Post, 807 F.2d at 390. The First Amendment, however, "does not prohibit a district court from limiting the disclosure of products of pretrial discovery." Oberg, 105 F.4th at 172; Rushford, 846 F.2d at 252.

The court has reviewed the documents in the appeals under the governing common law standard. The documents constitute judicial records; therefore, the common law presumption of public access arises. See, e.g., Oberg, 105 F.4th at 171; Rushford, 846 F.2d at 253. To maintain all the documents under seal, defendants must show that countervailing interests heavily outweigh the public interests in accessing the documents. See, e.g., Rushford, 846 F.2d at 253. In its motions to seal, defendants argue the appeals "cite[] to and discuss[]" sealed materials, "including [Magistrate Judge Numbers's] provisionally sealed order." [D.E. 307] ¶ 1; [D.E. 308] ¶ 1; see [D.E. 299] ¶ 1. The court also recognizes Magistrate Judge Numbers provisionally sealed two of his orders. See [D.E. 292, 293]. These facts do not mean, however, that defendants may maintain all the documents in the appeals under seal.

The documents in the appeals contain myriad references to public information, such as (1) governing law and legal arguments; (2) public filings and hearings; (3) unsealed, parallel actions related to this case; (4) publicly available information about this case; and (5) allegations contained

within Cape Fear's unsealed amended master complaint. The common law protects the public's interest in accessing this type of information. Defendants have failed to show that countervailing interests heavily outweigh the public's interest and require sealing all the documents. See, e.g., Rushford, 846 F.2d at 253.

To the extent that any of the documents in the appeals include confidential, protected, or privileged information, the documents may remain under seal. Defendants, however, should not seek to seal the entire record and instead should file redacted documents. See Fed. R. Civ. P. 5.2(a); Local Civ. R. 5.1(g); EDNC CM/ECF Policy Manual § IV.F. The court expects the parties to more carefully tailor their requests to seal and to ensure that their requests to seal comport with governing law.

The court denies in part defendants' motions to seal. Defendants shall file redacted documents concerning the appeals not later than April 14, 2025.

II.

Rule 26 permits broad but not unlimited discovery. See Fed. R. Civ. P. 26(b)(1); Nallapati v. Justh Holdings, LLC, No. 5:20-CV-47, 2022 WL 274405, at *2 (E.D.N.C. Jan. 28, 2022) (unpublished); EEOC v. Sheffield Fin. LLC, No. 1:06CV889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (unpublished); cf. Herbert v. Lando, 441 U.S. 153, 177 (1979); Hickman v. Taylor, 329 U.S. 495, 507 (1947); Ralston Purina Co. v. McFarland, 550 F.2d 967, 973 (4th Cir. 1977). A court may consider proportional costs and benefits of discovery. See Fed. R. Civ. P. 26(b)(1). Moreover, parties must comply with a court's local rules concerning discovery. Furthermore, a party may not use discovery to annoy, embarrass, oppress, or cause an undue burden or expense to the opposing party. See Fed. R. Civ. P. 26(c)(1). A district court has substantial discretion to grant or deny motions to compel discovery. See, e.g., Lone Star Steakhouse & Saloon, Inc. v.

5

Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995); Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir. 1988); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986).

The court may refer discovery disputes to a United States magistrate judge for resolution. See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Civ. R. 72.3(b). A party may object within 14 days after being served with a copy of the magistrate judge's order. See Fed. R. Civ. P. 72(a); Local Civ. R. 72.4(a). The court shall "consider timely objections and modify or set aside any portion of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A factual finding is clearly erroneous when the court is "left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (cleaned up); see United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); TFWS, Inc. v. Franchot, 572 F.3d 186, 196 (4th Cir. 2009). A magistrate judge's order is contrary to law when "the magistrate judge has misinterpreted or misapplied applicable law." Trudell Med. Int'l v. D R Burton Healthcare, LLC, No. 4:18-CV-9, 2021 WL 684200, at *3 (E.D.N.C. Feb. 22, 2021) (unpublished); Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). "Although the contrary to law standard permits plenary review of legal conclusions, decisions related to discovery disputes and scheduling are accorded greater deference." Johnson v. City of Fayetteville, No. 5:12-CV-456, 2013 WL 4039418, at *3 (E.D.N.C. Aug. 5, 2013) (unpublished); see Trudell, 2021 WL 684200, at *3; In re Outsidewall Tire Litig., 267 F.R.D. 466, 470 (E.D. Va. 2010).

A.

Cape Fear appeals Magistrate Judge Numbers's order denying in part Cape Fear's motion to compel production of certain redacted information contained in documents that the defendants produced. See [D.E. 295]. Cape Fear argues Magistrate Judge Numbers's order "is contrary to law because this Court does not allow unilateral redactions for relevance when a consent protective

6

order already is in place." Id. at 6. Cape Fear also argues that the requested documents "are relevant and proportional to the needs of the case" and that Magistrate Judge Numbers erred because the order "allows [d]efendants to withhold documents for claims of privilege that [defendants] ha[ve] never asserted with respect to the [r]edacted [d]ocuments." Id. at 10.

Defendants respond that Magistrate Judge Numbers conducted an in-camera review of the disputed documents, read the parties briefs, and held oral argument. Magistrate Judge Numbers then concluded that, with few exceptions, "the redacted materials appear irrelevant to the claims and defenses in this case and are not necessary to provide context to the issues in this litigation." [D.E. 289]. Moreover, Magistrate Judge Numbers provided specific portions of the redacted materials that were responsive and ordered defendants to produce unredacted versions of those portions. See id. at 2–3.

Cape Fear fails to establish that Magistrate Judge Numbers's factual findings were clearly erroneous or that Magistrate Judge Numbers misinterpreted or misapplied applicable law. Rather, Magistrate Judge Numbers carefully considered Cape Fear's motion to compel and granted the motion in part. Moreover, the court rejects Cape Fear's argument that "this [c]ourt does not allow unilateral redactions for relevance when a consent protective order already is in place." [D.E. 295] 6. It does. See, e.g., McDougal-Wilson v. Goodyear Tire & Rubber Co., 232 F.R.D. 246, 249–54 (E.D.N.C. 2005). Accordingly, the court affirms Magistrate Judge Numbers's order.

B.

Cape Fear appeals Magistrate Judge Numbers's order limiting discovery to the claims alleged in Cape Fear's amended complaint and restricting discovery concerning the Chemours spinoff. See [D.E. 301]. In July 2015, DuPont spun off its chemical division into Chemours, a newly-created and publicly-traded company. See, e.g., Am. Master Compl. [D.E. 75] ¶¶ 4–5, 27–

7

28. As part of the transaction, Chemours took ownership of the Fayetteville Works facility and leased manufacturing space in the facility to DuPont. See id. at ¶¶ 5, 30, 34. Here, Cape Fear pursues claims for private nuisance, trespass to real property, and negligence against Chemours. See id. at ¶¶ 158–66, 176–82. Cape Fear seeks both compensatory and punitive damages. See id. at ¶¶ 196–98. Cape Fear also has sued Chemours and others in the Delaware Court of Chancery and is pursuing a fraudulent transfer claim concerning DuPont's 2015 decision to spin off Chemours. See Cape Fear Pub. Util. Auth. v. EIDP, Inc., et al., C.A. No. 2023–0363 (Del. Ch. Mar. 24, 2023). The Delaware Court of Chancery stayed the Delaware action pending further development of the case in this court.

In its sixth set of requests for production to DuPont and seventh set of requests for production to Chemours, Cape Fear asked defendants "to designate individuals to testify on [defendants'] behalf about the Chemours spinoff. [Cape Fear] also sent subpoenas seeking documents and deposition testimony from Deloitte LLP and Houlihan Lokey, Inc. Those companies performed work for [DuPont] connected to the Chemours spinoff. And [Cape Fear] designated an expert witness who intends to testify about the economic benefits [DuPont] gained from the Chemours spinoff." [D.E. 292] 2. Defendants opposed the requests. See id.

After briefing and oral argument, Magistrate Judge Numbers determined Cape Fear's requests for production exceeded the scope of discovery and (1) granted defendants' motion for a protective order on "fraudulent transfer issues"; (2) denied Cape Fear's motion to compel; and (3) prohibited Cape Fear from designating an expert as to "fraudulent transfer issues," but permitted Cape Fear to designate an expert to opine on the savings and economic benefit DuPont allegedly enjoyed from Chemours's decision to delay installation of emission-reducing technology at the Fayetteville Works facility. See id. 6–11. Cape Fear appeals these rulings.

8

First, Cape Fear argues that its request for production falls within the scope of permissible discovery because its amended master complaint "puts [d]efendants on notice" that the Chemours spinoff "is relevant . . . to its trespass, nuisance, and negligence claims." [D.E. 301] 8. Moreover, Cape Fear argues it "cannot tell the full story of why both Chemours and DuPont are liable for compensatory and punitive damages for trespass, negligence, and nuisance, without" the requested discovery. Id. Furthermore, Cape Fear argues the Chemours spinoff "is willful and wanton" conduct relevant to its requests for punitive damages. See id. at 9–10. Cape Fear also argues that Magistrate Judge Numbers's order "usurped the district court's role as the gatekeeper of expert testimony." Id. at 10.

The court rejects Cape Fear's arguments and affirms Magistrate Judge Numbers's order. Cape Fear pursues claims for trespass, nuisance, and negligence for alleged PFAS contamination of the Cape Fear River from the defendants' Fayetteville Works facility. Cape Fear's asserted claims and requests for compensatory damages do not turn on the propriety of the Chemours spinoff. As Magistrate Judge Numbers noted, while Cape Fear's request for production seeks information to support a fraudulent transfer theory, Cape Fear does not pursue that theory in this case. Thus, Magistrate Judge Numbers properly concluded that Cape Fear's request for production exceeded the scope of discovery and denied Cape Fear's motion to compel. See, e.g., Lone Star Steakhouse & Saloon, 43 F.3d at 929; Erdmann, 852 F.2d at 792; LaRouche, 780 F.2d at 1139.

As for Cape Fear's argument that the Chemours spinoff is relevant to its request for punitive damages, punitive damages are not a separate cause of action under North Carolina law. See Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 81 (E.D.N.C. 2022); Sykes v. Health Network Sols., Inc., 372 N.C. 326, 329, 828 S.E.2d 467, 469 (2019); Watson v. Dixon, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000); Newton v. Barth, 248 N.C. App. 331, 345, 788 S.E.2d 653, 664 (2016).

9

To recover punitive damages, a claimant must prove that an aggravating factor of fraud, malice, or willful or wanton conduct is present and was related to the injury subject to the compensatory damages. See N.C. Gen. Stat. § 1D–15(a); DeRose for Est. of DeRose v. DoorDash, Inc., 675 F. Supp. 3d 591, 605 (E.D.N.C. 2023); OmniSource Corp. v. Heat Wave Metal Processing, Inc., No. 5:13-CV-772, 2015 WL 3452918, at *13 (E.D.N.C. May 29, 2015) (unpublished); Opsitnick v. Crumpler, No. 5:13-CV-835, 2014 WL 1682013, at *4 (E.D.N.C. Apr. 28, 2014) (unpublished); Catalano v. AARP Org., No. 5:09-CV-455, 2010 WL 3063263, at *2 (E.D.N.C. Aug. 4, 2010) (unpublished); Monk v. Progressive Se. Ins. Co., No. 7:06-CV-15, 2006 WL 8439059, at *2–3 (E.D.N.C. May 23, 2006) (unpublished).

Cape Fear's request for punitive damages must relate to its underlying claims for trespass, nuisance, or negligence. Cape Fear seeks punitive damages for defendants' alleged "conduct in secretly releasing their persistent, bioaccumulative, and toxic perfluoroalkyl substances into the Cape Fear River and contaminating the drinking water source for thousands of North Carolinians, all the while misleading state and Federal regulators and the public, [which] was willful and wanton, in that [d]efendants' acted with a conscious disregard for and indifference to the rights and safety of others, which [d]efendants knew or should reasonably have known was reasonably likely to result in injury, damage or harm." Am. Master Compl. ¶ 197. Whether DuPont created Chemours to limit its liability does not relate to Cape Fear's request for punitive damages. Because the request for production does not relate to the punitive damages sought in Cape Fear's amended master complaint, Magistrate Judge Numbers properly denied Cape Fear's motion to compel.

The only allegation that the Chemours spinoff might support is that DuPont profited from Chemours's alleged decision to delay installing emission-reducing technology at the Fayetteville Works facility. Magistrate Judge Numbers reached this same conclusion and noted that the

"Chemours Spinoff is relevant to [this issue], but only to the extent that the spinoff occurred and that Chemours was responsible for installation costs." [D.E. 292] 11. The parties do not dispute that the Chemours spinoff occurred or that Chemours controlled installation of emission-reducing technologies. Cape Fear requires no more discovery as to those issues. See id. at 11 n.1. Moreover, insofar as Chemours's decision to delay installing emission-reducing technologies relates to Cape Fear's request for punitive damages, Magistrate Judge Numbers did not block expert discovery concerning that issue. See id. at 10–11.

Cape Fear fails to establish that Magistrate Judge Numbers's factual findings were clearly erroneous or that Magistrate Judge Numbers misinterpreted or misapplied applicable law. Accordingly, the court affirms Magistrate Judge Numbers's order finding Cape Fear's requests exceeded the scope of discovery and denying Cape Fear's motion to compel.

Next, Cape Fear argues that Magistrate Judge Numbers usurped the district court's role by limiting the scope of Cape Fear's expert discovery and granting defendants a protective order concerning the fraudulent transfer issues. Magistrate Judge Numbers noted that protective orders "do not focus on admissibility, but focus on discoverability." Id. at 10. The court may issue a protective order for good cause, such as "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Likewise, a court may restrict the scope of permissible expert discovery when that restriction is based on relevance and proportionality. See, e.g., Hadaway v. City of Milwaukee, No. 19-CV-1106, 2024 WL 1435237, at *4 (E.D. Wis. Mar. 31, 2024) (explaining that Rule 26(b)(1) governs "discovery—including expert discovery"); Shukh v. Seagate Tech., LLC, 295 F.R.D. 228, 238 (D. Minn. 2013) ("Like all other discovery, information sought in connection with expert testimony must be relevant to the claim or defense."). Because Magistrate Judge Numbers properly concluded that

11

fraudulent transfer issues fell outside the scope of discovery, Magistrate Judge Numbers properly restricted expert discovery as to this same issue.

Cape Fear fails to establish that Magistrate Judge Numbers's factual findings were clearly erroneous or that Magistrate Judge Numbers misinterpreted or misapplied applicable law. Accordingly, the court affirms Magistrate Judge Numbers's order.[2]

C.

Cape Fear appeals Magistrate Judge Numbers's order denying Cape Fear's motion to compel the production of documents that defendants withheld as privileged. See [D.E. 303]. In March 2023, defendants served Cape Fear with 15 privilege logs. See [D.E. 293] 3. Cape Fear raised concerns over the contents of the privilege logs, and defendants produced some of the previously withheld documents. See id. at 4. Cape Fear, however, remained dissatisfied with defendants' productions and remaining assertions of privilege. The privilege logs contained, inter alia, communications between the defendants and (1) litigation consultants, (2) attorneys, and (3) environmental consultants. See id. at 1. Defendants asserted attorney-client and work-product privileges over these documents. See id. at 1–5. Eventually, Cape Fear filed a motion to compel and argued that the defendants' "privilege logs are so inadequate that the court should order the production of all items listed on them." Id. at 1.

Magistrate Judge Numbers denied Cape Fear's motion to compel because: (1) Cape Fear failed to comply with Local Civil Rule 7.1(c)(2); (2) defendants' privilege logs were not so deficient that the court should deem the attorney-client privilege or work-product doctrine waived; and (3) defendants' blanket invocation of work-product protection over communications with its

---

[2] The court did not consider defendants' constitutional due process argument; therefore, the court denies as moot Cape Fear's motion for leave to file a reply [D.E. 312].

consultants does not justify an order compelling defendants to produce all documents on their privilege logs. See id. at 3–4.

The court has reviewed Magistrate Judge Numbers's order, Cape Fear's appeal, and the governing law. See Fed. R. Civ. P. 72(a); TFWS, Inc., 572 F.3d at 196; Johnson, 2013 WL 4039418, at *3; Trudell, 2021 WL 684200, at *3; Outsidewall Tire, 267 F.R.D. at 470. Magistrate Judge Numbers thoroughly considered Cape Fear's motion to compel and issued his order after receiving briefing on the issue and holding a hearing. The court agrees with Magistrate Judge Numbers's findings and conclusions and concludes that (1) Cape Fear failed to comply with Local Civil Rule 7.1(c)(2); (2) defendants properly asserted the attorney-client privilege and work-product doctrine; and (3) defendants' invocation of work-product protection over communications with consultants does not justify an order compelling defendants to produce all documents on the privilege logs.

On appeal, Cape Fear largely rehashes arguments from its original motion to compel. Compare [D.E. 310] 7–10, with [D.E. 149] ¶¶ 1–5, and [D.E. 150] 8–11. To begin, the court rejects Cape Fear's understanding of Local Civil Rule 7.1. Local Civil Rule 7.1 states

> No discovery motion will be considered by the court unless the motion sets forth or has attached thereto, by item, the specific question, interrogatory, etc., with respect to which the motion is filed and any objection made along with the grounds supporting or in opposition to the objection. The movant must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions.

Loc. Civ. R. 7.1(c)(2). As Magistrate Judge Numbers noted, Cape Fear's motion to compel attacked the sufficiency of defendants' privilege logs without identifying "a discovery request it served that the withheld documents would address." [D.E. 293] 5. On appeal, Cape Fear argues that its motion to compel satisfies Local Civil Rule 7.1(c)(2) because the "specific question raised

13

by [Cape Fear's] [m]otion is the adequacy of [defendants'] privilege logs." [D.E. 303] 5 (quotation omitted).

The court rejects Cape Fear's argument. If Cape Fear were correct, plaintiffs could always raise the "specific question" of the adequacy of a defendant's privilege logs without regard to whether the privilege logs contain information relevant and responsive to the plaintiff's discovery requests. Cape Fear's reading vitiates not only Local Civil Rule 7.1, but also Federal Rule of Civil Procedure 26 which provides for broad discovery of any nonprivileged matter "relevant" and "proportional" to a plaintiff's claims. Fed. R. Civ. P. 26(b)(1). Cape Fear failed to comply with Local Civil Rule 7.1(c)(2), and the court rejects Cape Fear's argument.

The court also rejects Cape Fear's argument that Magistrate Judge Numbers failed to apply "the established Fourth Circuit law concerning engagement of consultants when asserting a privilege." [D.E. 303] 7. As Cape Fear admits, Magistrate Judge Numbers cited the relevant standard in his order. See id. at 9; [D.E. 293] 11 (citing Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)). As Magistrate Judge Numbers noted, "the Fourth Circuit recognize[s] that sometimes a document may have both a litigation and non-litigation purpose. In that circumstance, the attorney-work product doctrine will only apply if litigation was the 'driving-force' behind the document's creation." [D.E. 293] 11 (internal citation omitted); see Nat'l Union, 967 F.2d at 984. Magistrate Judge Numbers then considered defendants' assertion of privilege and found that "the driving force behind the creation of the documents [at issue] . . . [was] litigation, and . . . Chemours may claim work-product protection" for its communications with third-party consultants. [D.E. 293] 12.

14

Cape Fear fails to establish that Magistrate Judge Numbers's factual findings were clearly erroneous or that Magistrate Judge Numbers misinterpreted or misapplied applicable law. Accordingly, the court affirms Magistrate Judge Numbers's order.

### III.

In sum, the court AFFIRMS the magistrate judge's orders [D.E. 289, 292, 293], DENIES IN PART defendants' motions to seal [D.E. 299, 307, 308], and DENIES AS MOOT plaintiffs' motion for leave to file a reply [D.E. 312]. The court temporarily will maintain the documents in the appeals under seal but DIRECTS defendants' counsel to refile the documents properly redacted not later than April 14, 2025.

SO ORDERED. This **14** day of March, 2025.

JAMES C. DEVER III
United States District Judge