IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| CAPE FEAR PUBLIC UTILITY AUTHORITY, BRUNSWICK COUNTY, LOWER CAPE FEAR WATER & SEWER AUTHORITY, and TOWN OF WRIGHTSVILLE BEACH,<br><br>Plaintiffs,<br><br>v.<br><br>THE CHEMOURS COMPANY FC, LLC, E.I. DU PONT DE NEMOURS AND COMPANY, and THE CHEMOURS COMPANY,<br><br>Defendants. | Case No. 7:17-CV-195-D<br><br>Case No. 7:17-CV-209-D<br><br>**ORDER** |

On January 31, 2018, the Cape Fear Public Utility Authority ("Cape Fear" or "plaintiff") and Brunswick County (the "County"; collectively "plaintiffs") filed a Master Complaint of Public Water Suppliers against DowDuPont, Inc. ("DowDuPont"),[1] E.I. du Pont de Nemours and Company ("DuPont"), The Chemours Company, and The Chemours Company FC, LLC ("Chemours"; collectively "defendants") alleging that defendants discharged toxic chemicals from the Fayetteville Works facility into the Cape Fear River and surrounding air, soil, and groundwater. See Master Compl., Brunswick Cnty., No. 7:17-CV-209-D (E.D.N.C. Jan. 31, 2018) [D.E. 35].

---

[1] On March 1, 2018, the County voluntarily dismissed without prejudice DowDuPont as a defendant. See Notice of Voluntary Dismissal, Brunswick Cnty. v. E.I. du Pont de Nemours & Co., No. 7:17-CV-209-D (E.D.N.C. Mar. 1, 2018) [D.E. 45–47]. On March 2, 2018, Cape Fear voluntarily dismissed without prejudice DowDuPont as a defendant. See Notice of Voluntary Dismissal, Cape Fear Pub. Util. Auth. v. Chemours Co. FC, No. 7:17-CV-195-D (Mar. 2, 2018) [D.E. 35].

The court has detailed the extensive procedural history of this case. See, e.g., Cape Fear Pub. Util. Auth. v. Chemours Co. FC, LLC, No. 7:17-CV-195-D, 2019 WL 13300188 (E.D.N.C. Apr. 19, 2019) (unpublished). This order recounts relevant events concerning the pending motions.

On April 19, 2019, the court dismissed plaintiffs' public nuisance claim. Id. at *5. On May 7, 2019, plaintiffs filed an Amended Master Complaint ("AMC") [D.E. 75]. The AMC includes the Lower Cape Fear Water & Sewer Authority ("LCFWSA") and the Town of Wrightsville beach ("Wrightsville") as plaintiffs (collectively, with others, "plaintiffs"). See id. at 1.

On July 12, 2024, Cape Fear filed a motion for leave to file a supplemental amended master complaint and for reconsideration of the order dismissing plaintiffs' public nuisance claim [D.E. 317] and filed a memorandum in support [D.E. 318]. On July 24, 2024, the County, Wrightsville, and LCFWSA filed a notice of joinder in Cape Fear's motion [D.E. 321] and filed supplemental authority in support of Cape Fear's motion for reconsideration [D.E. 321-1–321-3]. On August 9, 2024, defendants responded in opposition [D.E. 323]. On August 23, 2024, Cape Fear replied [D.E. 324]. As explained below, the court denies plaintiffs' motion for leave to amend and for reconsideration.

I.

Cape Fear seeks leave to supplement its amended master complaint under Federal Rule of Civil Procedure 15(d) and Local Civil Rule 15.1 to allege "transactions, occurrences, and events that have happened (almost continuously) since the date of the AMC and relate to the issues in this case." [D.E. 318] 2. These allegations concern recent scientific research, cleanup efforts, and damages. See [D.E. 317-1]. Cape Fear seeks to add new allegations that "[d]espite the remedial measures undertaken by Chemours . . . PFAS released by Defendants from Fayetteville Works

2

continues to be transported by air, groundwater, or surface water to the Kings Bluff Pump Stations, from which Cape Fear sources drinking water directly." Id. at ¶ 212. Moreover, Cape Fear alleges that in October 2019, Cape Fear installed a granular activated carbon ("GAC") filtration system at its facility to remove PFAS contamination, resulting in increased costs. See id. at ¶ 213. Cape Fear alleges that "[t]hrough fiscal year 2023, GAC related capital and operational expenses totaled $53.7 million, with future operational expenses (at present value) estimated to be $116.8 million." Id. at ¶ 216(a). Cape Fear also alleges future damages from ongoing remedial efforts. See id. at ¶¶ 216(b)–(e). Furthermore, Cape Fear alleges that the proposed supplemental master complaint contains "special damages." [D.E. 317] ¶ 13.

A.

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time." Id.

"Leave to supplement should be freely granted, and should be denied only where good reason exists . . . , such as prejudice to the defendants." Hodges v. Meletis, 109 F.4th 252, 263 n.17 (4th Cir. 2024) (alteration in original) (quotations omitted); Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002). An outright refusal to grant "leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178, 182 (1962).

Cape Fear seeks to supplement allegations regarding the cost associated the GAC filtration system. See [D.E. 317-1] ¶ 213. Cape Fear installed the GAC system in "October 2019" and it "went into service in 2022." Id. Fact discovery in this case lasted from May 28, 2019, until December 15, 2023, which is four years, six months, and 18 days. Compare [D.E. 82] 1 with [D.E. 142] 1. The installation and operationalization of the GAC system occurred entirely within the fact discovery period for this case. Cape Fear filed its motion on July 12, 2024, which is eight months after the close of fact discovery.

In opposing Cape Fear's motion, defendants argue Cape Fear's motion to file a supplemental master complaint constitutes an attempt to revive "[p]laintiffs' failed claim for public nuisance." [D.E. 323] 2. Defendants argue if they "had known that [Cape Fear] intended to supplement with allegations about its special damages, [d]efendants would have conducted discovery on this issue." Id. at 4. Moreover, defendants argue they did not serve discovery on Cape Fear regarding a public nuisance claim because this court dismissed plaintiffs' public nuisance claim. See id. Defendants also argue that if the court grants Cape Fear's motion, they would "need discovery to explore" Cape Fear's contentions regarding the GAC filtration system and its operating costs. See id. Cape Fear replies that defendants "admit they had the opportunity to conduct discovery on the 'same' damages because the private nuisance claim has been alive throughout the litigation." [D.E. 324] 2.

Cape Fear waited to file its motion until eight months after the close of fact discovery and more than three years after the installation of the GAC system. Although Cape Fear argues "[t]his is the appropriate time to update the Court on the transactions, occurrences, and events since the AMC affecting this case," [D.E. 318] 6, Cape Fear fails to explain its unusual delay and ignores the unfair prejudice to defendants. See Fund for Animals v. Hall, 246 F.R.D. 53, 55 (D.D.C. 2007)

4

(a district court should consider delay and unfair prejudice in deciding whether to permit a supplemental pleading).

As for Cape Fear's delay, Cape Fear's motion violates this court's local rules. See Local Civ. R. 7.1(a) (requiring all motions except those relating to the admissibility of evidence at trial to be filed on or before 30 days following the conclusion of the period of discovery). Fact discovery closed on December 15, 2023, yet Cape Fear did not file its motion until July 12, 2024. Moreover, if Cape Fear had filed sooner, defendants could have taken discovery during the fact discovery period.

As for unfair prejudice, granting Cape Fear's motion would unfairly prejudice defendants. If the court grants Cape Fear's motion, defendants either would need to take additional discovery on issues concerning the GAC filtration system and its associated operation costs or need to defend against the issues without discovery. Unfair prejudice "flows from the competing goals of moving this case to completion in a timely manner, and allowing a fair opportunity for discovery as to the new" information. Sacks Holdings, Inc. v. Grin Natural USA Ltd., et al., No. 1:23CV1058, 2024 WL 4476374, at *3 (M.D.N.C. Oct. 11, 2024) (unpublished); see Hodges, 109 F.4th at 263 n.17; Franks, 313 F.3d at 198 n.15. This long-pending case needs to move towards completion. This court is not going to reopen fact discovery. Granting Cape Fear's motion would unfairly prejudice defendants. Accordingly, the court denies Cape Fear's motion to file a supplemental master complaint.

B.

Cape Fear also asks the court to reconsider its order dismissing plaintiffs' public nuisance claim. See [D.E. 317] 4–5. In dismissing Cape Fear's public nuisance claim, the court observed that "[t]o state a public nuisance claim as private parties, plaintiffs must allege '(1) injury to a

protected interest that cannot be considered merged in the general public right; (2) causation; and (3) proper, or individualized, forms of relief.'" Cape Fear Pub. Util. Auth., 2019 WL 13300188 at *5 (quoting Neuse River Found., Inc. v. Smithfield Foods, Inc., 155 N.C. App. 110, 116, 574 S.E.2d 48, 53 (2002), abrogated on other grounds by Comm. to Elect Dan Forest v. Emps. Pol. Action Comm., 376 N.C. 558, 853 S.E.2d 698 (2021)). The court dismissed plaintiffs' public nuisance claim because plaintiffs failed to plausibly allege "special and unique" damages flowing from defendants' alleged interference with plaintiffs' property. See id.; Barrier v. Troutman, 231 N.C. 47, 50, 55 S.E.2d 923, 925 (1949) (collecting cases); Hampton v. N. Carolina Pulp Co., 223 N.C. 535, 543, 27 S.E.2d 538, 544 (1943); Neuse River Found., Inc., 155 N.C. App. at 116, 574 S.E.2d at 53.

Cape Fear argues the court should reconsider its order because (1) the proposed supplemental master complaint alleges special damages, see [D.E. 317] ¶ 12; and (2) North Carolina law does not require a showing of "special and unique" damages. See [D.E. 318] 16–18. The court rejects Cape Fear's argument.

Even if the Supreme Court of North Carolina has not specifically used the phrase "special and unique" damages, [D.E. 318] 16, the Supreme Court of North Carolina has required plaintiffs asserting a public nuisance claim to show "unusual and special" damages, Barrier, 231 N.C. at 49, 55 S.E.2d at 925, "special or peculiar" damages, Hampton, 223 N.C. at 543, 27 S.E.2d at 544, "special and peculiar damages," Elliott v. Tallassee Power Co., 190 N.C. 62, 128 S.E. 730 (1925) (emphasis added), or special damages that are "unusual or extraordinary, but not necessarily singular" or such damages "not common to the whole public." Farmers' Co-operative Mfg. Co. v. Albemarle & R.R., 117 N.C. 579, 23 S.E. 43, 43 (1895).

6

Cape Fear's semantic arguments are not persuasive. The principle of North Carolina public nuisance law at issue in these cases does not turn on the absence of the word "unique." In dismissing plaintiffs' public nuisance claim, the court properly applied North Carolina law. See Cape Fear Pub. Util. Auth., 2019 WL 13300188 at *5. Cape Fear has not presented any arguments warranting reconsideration. Thus, the court denies Cape Fear's motion for reconsideration.

II.

In sum, the court DENIES plaintiffs' motion for leave to file a supplemental amended master complaint and for reconsideration of the order dismissing plaintiffs' public nuisance claim [D.E. 317].

SO ORDERED. This 14 day of March, 2025.

                                                        JAMES C. DEVER III
                                                        United States District Judge